# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MCKINLEY LAMBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 6789 |
| ) | |
| PERI FORMWORKS SYSTEM, INC., ) | Judge Sharon Johnson Coleman |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff McKinley Lambert filed a four Count Complaint alleging a hostile work environment based on sexual harassment and racial discrimination. Lambert also alleges retaliation and wrongful termination based on his complaints of racial and sexual harassment. Defendant[1] Peri Formworks System, Inc. ("Peri") moves for summary judgment. For the reasons set forth below the motion is granted.

**Background**

Peri provides concrete forms and scaffolding used in construction, and has more than twenty facilities across the country. Peri employs general laborers as yard workers who inspect, repair, and organize concrete forms and scaffolding, and take inventory of material returned from construction companies and load and unload trucks. Yard leads are employees who lead teams of yard workers on their duties throughout the day. Yard leads do not have the authority to hire or fire or discipline employees. Laborers were told that they had to follow yard leads' orders

---

[1] Robert Wallace was initially named as a defendant, but this Court dismissed him for lack of service.

or face discipline. A yard manager oversees the yard leads and the general laborers or yard workers. Yard Managers have the authority to discipline and suspend employees. A logistics manager oversees all operations at the facility, including supervising the yard managers and yard workers. The logistics manager can hire, fire, and discipline employees.

McKinley Lambert was hired as a general laborer at Peri's Calumet Park, Illinois, facility in September 2003. Jesus Santiago was yard lead when Lambert was a laborer. Santiago and Lambert had a close relationship. Santiago was promoted to yard manager in March 2006 and began reporting to Robert Wallace who became the logistics manager. While Lambert was employed at Peri three people held the position of logistics manager: Dave Mokhtarian, Christie Gouwens, and Robert Wallace. Lambert had observed Mokhtarian discipline employees. Tom Burkhart was the regional manager and was generally present at the Calumet Park facility two days a week. Lambert saw Burkhart sparingly. Peri's human resources personnel are all located at its corporate headquarters in Maryland. Tami Osheroff is Peri's national human resources manager. Peri employees could call Osheroff with any human resources questions. Osheroff regularly conducted day-long announced visits to the Calumet Park facility to conduct training, answer questions, and informally get to know employees. Lambert called Osheroff on at least one occasion with questions about his benefit time.

In September 2006, Santiago gave Lambert a favorable performance evaluation. Santiago promoted Lambert to yard lead in January 2007. According to the findings contained in the Illinois Department of Human Rights investigation report, on May 3, 2007, Wallace noticed that Lambert was acting in a manner inconsistent with his normal behavior. Wallace called Osheroff to review the company's suspicion of alcohol use policy and then asked Santiago to observe

Lambert's behavior to confirm whether it was unusual.[2] Santiago talked to Lambert and testified that he would not maintain eye contact and his eyes appeared glossy, which confirmed for him that something was not right with Lambert. Osheroff testified that she spoke to Lambert over the telephone and he got very loud and erratic. Wallace, Osheroff, and Santiago made the decision to send Lambert for drug and alcohol testing. Lambert then purchased five cups of coffee, which he consumed in the fifteen to twenty minute car ride to the testing facility with Santiago and another employee. The breathalyzer results indicated that Lambert had consumed alcohol. He was terminated that day.

Peri has a zero tolerance policy for drug and alcohol consumption that mandates testing after an accident and also allows for reasonable suspicion testing. Lambert testified that on one occasion he saw several Hispanic employees drinking beer in the parking lot and that Wallace was in the vicinity, observed it, and did nothing, but Lambert admits he never asked Wallace about the incident. In his affidavit, Lambert's brother-in-law, Lawrence Webb, who had also been terminated by Peri for being intoxicated, stated that Jesus Santiago observed a Hispanic employee drinking beer on the job, but does not state how he knows that Santiago made this obervation.

Lambert alleges that between March 2004 and April 2007 he was sexually harassed daily by his co-worker Hugo Robledo, who would make sexually offensive comments in English and Spanish, including "shake it for me," and "suck my penis," among other comments. Robledo

---

[2] Lambert objects to the admissibility of statements by Robert Wallace contained in the IDHR report on the basis of hearsay. However, "[t]rial courts have broad discretion when ruling on the admissibility of administrative findings regarding claims of discrimination." *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686, 692 (N.D. Ill. 1994). Usually administrative findings such as those in an IDHR report are admissible under Fed. R. Evid. 803(8)(C), but may be excluded if the prejudicial effect outweighs the probative value of the evidence under Fed. R. Evid. 403. Even if this Court excludes the IDHR report, there is testimony from Osheroff that Wallace called about Lambert and to review the company policy, and Santiago that Wallace asked him to talk to Lambert and see if he seemed alright.

also touched Lambert's buttocks twice and exposed himself to Lambert and other workers in the locker room, stared at Lambert's genitals, and talked to him from an unwelcome distance. Sometime in 2004 or 2005 Lambert complained to Redalfo Avila, a yard lead. Lambert also complained to Santiago sometime in 2005, after he told Avila about Robledo's harassment. Santiago was still yard lead. Santiago testified that he did not believe that anyone was offended by the comments and "horseplay" around the yard.

In May 2005, Peri issued an employee handbook that contained procedures for reporting harassment. Employees were to report harassment to either Tami Osheroff or the company CEO. Osheroff stated in her affidavit that employees could also report to yard managers or the logistics manager. Lambert received the handbook and was aware of the harassment reporting procedure in it. Lambert did not report the harassment to Osheroff or anyone other than Avila and Santiago.

Lambert also alleges that he was subjected to a racially hostile work environment. In April 2007, he went to Serge Berger's work area to inspect some equipment and Berger said, "I don't respect you, you're a nigger." Lambert alleges that he reported this statement to Wallace. Berger was a supervisor in another department and Lambert testified that Berger had no authority over him. Lambert also testified that Berger never directed any racist language toward him during the prior three and one half years they worked together. Lambert also alleges that Wallace referred to laborers as "donkeys" on about five occasions. Lambert never heard Wallace refer to him as a donkey. Peri employed general laborers that were white, African American, and Hispanic, during the time that Wallace referred to laborers as donkeys.[3] Wallace also referred to Kevin Lindsay, an African American employee as a "big old gorilla" on one occasion.

---

[3] Although Lambert states an objection to this fact, he makes no reference to the record to support his dispute.

Following his termination, Lambert sent a letter to Peri's corporate office on June 4, 2007, complaining of sexual and racial harassment. Osheroff responded on June 19, 2007, indicating that she would investigate all of his allegations and asked him to provide additional information relating to his complaints. Lambert responded on June 26, 2007, but did not provide Osheroff with any additional information.

On October 21, 2010, Lambert filed the instant lawsuit alleging a hostile work environment based on sexual and racial harassment as well as retaliation and wrongful termination. Peri moves for summary judgment on all counts.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005). However, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal quotation marks and citation omitted)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. If the nonmoving party fails to make a sufficient showing on an essential element of his case, the moving party is entitled to judgment as a matter of law because "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th

Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

**Discussion**

Peri argues that it is entitled to judgment as a matter of law in its favor on all counts because even when viewed in the light most favorable to Lambert, the undisputed facts demonstrate that Lambert did not take reasonable steps to notify Peri of the alleged sexual harassment, that Lambert was not subjected to an objectively hostile work environment based on his race, and that Lambert was terminated for being intoxicated at work in violation of Peri's zero tolerance policy. This Court will address each specific issue in turn.

In order to establish a prima facie case for hostile work environment based on sexual harassment, the plaintiff must show: (1) he was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at him because of his sex; and (4) there is a basis for employer liability. *Rhodes v. Ill. Department of Transportation,* 359 F.3d 498, 505 (7th Cir. 2004). The claim of sexual harassment resulting in a hostile work environment currently before the court turns on whether there is a basis for employer liability. The undisputed facts show there is no genuine issue as to employer liability for a jury to resolve.

The standard for employer liability depends on whether the alleged harasser was the plaintiff's supervisor, instead of merely a co-worker. *See, e.g., Faragher v. City of Raton*, 524 U.S. 775, 807-08 (1998). Here, there is no dispute that Lambert's alleged harasser, Hugo Robledo, was not his supervisor. Therefore, the employer, Peri, is only liable where the plaintiff proves that the employer has been negligent either in discovering or remedying the harassment.

*Rhodes*, 359 F.3d at 505-06. An employee must make a concerted effort to inform the employer that a problem exists. *See Rhodes*, 359 F.3d at 506 (citing *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999)). If the employer has designated a channel for complaints about harassment, "the [point] person becomes the natural channel for the making and forwarding of complaints and complainants can be expected to utilize it in the normal case." *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997). If an employer has not designated a point person, the complainant may give notice to a 'department head' or someone that "the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998).

Lambert alleges that he was subjected to daily sexual harassment from March 2004 until April 2007 by a co-worker, Hugo Robledo, including physical conduct, offensive comments, and unwanted sexual advances. It is undisputed that Lambert complained twice, once to Redalfo Avila and once to Jesus Santiago.[4] Both Avila and Santiago were yard leads at the time and unable to hire, fire, or discipline employees. Lambert admits that he never saw a yard lead discipline an employee. Since neither Avila nor Santiago could discipline employees, Lambert could not have reasonably believed they were authorized to process such complaints. *See Parkins*, 163 F.3d at 1038.

Lambert admits that he never complained to anyone besides Avila and Santiago, despite having regular access to managers Tom Burkart and David Mokhtarian. In 2005, Peri issued an

---

[4] Although Lambert testified in his deposition that he only complained twice, he submitted an affidavit attached to his Rule 56.1 statements of additional facts in which he states that he complained to Avila and Santiago on multiple occasions. Parties cannot create issues of fact by submitting an affidavit that contradicts prior deposition testimony. *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). Plaintiff did not offer any explanation such as confusion, mistake, or lapse in memory for the newly proffered statement that he complained multiple times to both Avila and Santiago. *See McCann v. Iroquois Mem. Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010). Even if this Court were to consider the affidavit since neither Avila nor Santiago were in positions of authority, it would be unreasonable for Lambert to continue complaining to them without going higher up the chain of command. *See Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038 (7th Cir. 1998).

employee handbook that included formal policies and procedures for reporting sexual and racial harassment. Lambert admits that he had a copy of the handbook and was aware of the harassment reporting procedure. Although the handbook contains a blanket admonishment that all employees are responsible for preventing harassment, the handbook contains specific procedures for reporting harassment. Peri designated its National Human Resources Manager, Tami Osheroff, as the point person for reporting harassment. Employees could also complain to Peri's CEO in writing. Lambert admits that he knew how to contact Osheroff, but that he never contacted her to complain about the harassment. Therefore, there is no issue of material fact on which to base Peri's liability and Peri is entitled to judgment as a matter of law.

Next, this Court will address Lambert's claims of racial harassment. "In order to impose Title VII liability for a racially hostile workplace, a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010) (citing *Mendenhall v. Mueller Streamline Co.,* 419 F.3d 686, 691 (7th Cir. 2005) (citations omitted)). Courts consider the totality of the circumstances when determining whether the conduct at issue is sufficiently severe or pervasive to be actionable including such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002).

Lambert alleges that around April 2007, a supervisor in a different department, Serge Berger told Lambert, "I don't respect you, you're a nigger." Lambert also alleges that the

Logistics Manager Robert Wallace referred to general laborers at Peri as "donkeys" in Lambert's presence on about five occasions, though the comment was never directed at Lambert. Lambert also alleges that Wallace referred to an African-American co-worker as a "big old gorilla" on one occasion. The incidents of offensive language appear from the undisputed facts to be isolated comments occurring over a period of several years. The comments are not physically threatening nor are there any indications that the comments affected Lambert's work performance.

Additionally, with the single exception of the epithet used by Berger, none of the comments were directed at Lambert. "As 'second-hand' harassment, the impact of these incidents is obviously not as great as the impact of harassment directed at the plaintiff." *Peters*, 307 F.3d at 552. Moreover, it is unclear from the record that the term "donkeys" to refer to general laborers has a racial connotation since Peri employs laborers of different racial backgrounds and ethnicities. Nothing in the record indicates that Wallace used the term only to refer to black laborers. Donkeys are also commonly known as labor animals. This Court does not wish to minimize the offensiveness of the one comment directed at Lambert, or any person for that matter, however, the statement was a single incident made by an individual who had no authority over Lambert and worked in a different department. Accordingly, this Court finds that even when viewed in the light most favorable to Lambert, the incidents of offensive comments, racial or otherwise, are neither sufficiently severe nor pervasive to be actionable.

Lastly, the Court will address Lambert's allegations that his termination for alcohol use was mere pretext and he was tested for alcohol intoxication in retaliation for his complaints about sexual and racial harassment. A plaintiff may proceed under the direct or indirect method

to prove a claim of retaliation in violation of Title VII.[5] *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). To satisfy the direct method of proof, Lambert must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action at the hands of Peri; and (3) there was a causal link between the two. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 441 (7th Cir. 2010).

Here, assuming for purposes of the motion at bar that the first two elements are met. The element at issue is the causal link between the Lambert's complaints and his termination. Lambert has not shown any direct evidence tying his complaints of harassment to his termination and thus he must establish this connection through circumstantial evidence. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Courts consider several categories of circumstantial evidence to draw this connection including: (1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Coleman*, 667 F.3d at 860. To prevail on his retaliation claim, Lambert must prove that the decisionmaker (i.e., "the person responsible for the contested decision") has acted for a prohibited reason. *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011).

Wallace, Santiago, and Osheroff, were all involved in the decision to send Lambert for sobriety testing through urinalysis or breathalyzer. Lambert never contends that he complained to either Santiago or Osheroff about racial harassment and admits that he never complained to

---

[5] Judge Diane Wood's concurring opinion in *Coleman v. Donahoe,* 667 F.3d 835, 859 (7th Cir. 2012), questioned the continued adherence to the *McDonnell-Douglas* direct and indirect methods of proof. The concurring judges noted that the circumstantial evidence analysis under the direct method of proof and the indirect method of proof nearly always yield the same conclusion and therefore there must be a more efficient method of analysis. This Court agrees.

Osheroff at all. There is nothing in the record to suggest that Wallace, Santiago and Osheroff did not reasonably believe that Lambert's unusual behavior might be due to intoxication. Lambert does not dispute that at all times relevant to this litigation no Peri employee was permitted to keep his or her job after failing a drug test of any kind. Lambert does not dispute that Peri had a zero tolerance policy for alcohol and drug use by employees, but contests that it was evenly enforced. Lambert argues that he was treated differently than certain Hispanic employees who he says were drinking on the job. Lambert testified that he saw several Hispanic employees drinking beer and that Wallace was in the vicinity and would have seen them, yet he never ordered them to undergo a sobriety test or otherwise enforce Peri's zero tolerance policy. However, Lambert admits that he never discussed the incident with Wallace or anyone else and thus there is only Lambert's assumption that Wallace saw the other employees drinking beer. This Court finds nothing in the record to support an inference that there was a causal connection between Lambert's complaints of harassment and his termination for violating Peri's alcohol policy. Thus, Lambert fails to show direct evidence of retaliation.

Under the indirect method of proof, instead of demonstrating a causal connection between the first two elements, Lambert must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 431 (7th Cir. 2010). The indirect method also triggers the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If Lambert establishes a prima facie case of retaliation, then the burden shifts to Peri to offer a legitimate nondiscriminatory explanation for the decision to discharge him. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). The burden of production then shifts back to Lambert to

show that Peri's proffered reason for his discharge is pretextual. *E.g.*, [Vance v. Ball State Univ., 646 F.3d 461, 473 (7th Cir. 2011)](#).

Under this method, it is undisputed that Lambert performed his job satisfactorily. He was promoted and the record indicates positive performance evaluations. The record is devoid of evidence that Lambert was treated differently than similarly situated employees. As previously noted, Lambert does not dispute that no Peri employees that failed drug or alcohol testing were permitted to keep their jobs. It is undisputed that between May 2006 and May 2008 the following Peri employees were terminated for failing a drug or alcohol test at a Peri facility in the United States: Christopher Lefever (Caucasian); Raymond DeLorme (Caucasian); Dan Webb (Caucasian); Kevin Heston (Caucasian); Chris Grasser (Caucasian); Jeff Green (Caucasian); Antonio Crenshaw (Hispanic); Issac Jackson (African American); Charles Schlaepfer (Caucasian); Wayne Bruce (African American); Joel Waddell (African American); Everett Humphrey (African American); Raymond Gutierrez (race unknown); Kenyon Jones (African American); Quillan Banks (African American); and Leslie Lynch (Caucasian).

Although all four employees from the Calumet Park facility are African American there is no evidence in the record to suggest that either the drug testing or their termination was racially motivated. Two of the employees were subjected to mandatory post-accident drug testing and two (Lambert and his brother-in-law Lawrence Webb) were subjected to reasonable suspicion drug testing. As with Lambert the decision to conduct reasonable suspicion testing for Lawrence Webb was made by Wallace, Santiago, and Osheroff. There is no evidence in the record to suggest that any of the employees terminated for failing drug or alcohol testing ever engaged in any protected activity. The only evidence that any employees of a different race or ethnicity consumed alcohol on the job and were not terminated is Lambert's own testimony,

which is insufficient to defeat summary judgment. Thus, Lambert has not shown that similarly-situated employees were treated differently. Even assuming arguendo that Lambert could establish a prima facie case for retaliation, Peri has offered the legitimate nondiscriminatory reason for his termination based on his violation of the company's zero tolerance drug and alcohol policy. The record lacks any evidence that Peri's proffered reason was pretextual. In fact, Lambert's complaints of harassment to his superiors appear to have started after his termination. This Court therefore finds that Lambert fails to establish a claim for retaliation under the indirect method of proof and Peri is entitled to judgment as a matter of law.

Based on the foregoing discussion, Peri's motion for summary judgment is granted.
IT IS SO ORDERED.

Date: May 25, 2012

Entered:_____
Sharon Johnson Coleman